TIMOTHY COURCHAINE
United States Attorney
District of Arizona
RYAN MCCARTHY
Arizona State Bar No. 029804
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Ryan.McCarthy@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-26-00082-PHX-DWL |
| Plaintiff, | |
| vs. | **UNITED STATES' SENTENCING MEMORANDUM** |
| Diego Armando Gonzalez-Rosales, | |
| Defendant. | |

The United States submits this memorandum in support of sentencing in this case. The United States recommends Diego Armando Gonzalez-Rosales ("Defendant") be sentenced to 5 months of incarceration followed by one year of supervised release. The United States' position is more fully set forth in this memorandum of points and authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    BACKGROUND

#### a.  *Zipps Investigation*

In February 2025, HSI Phoenix Special Agents received a tip alleging that Zipps Sports Grill's fourteen restaurant locations in Arizona were employing illegal aliens to staff their kitchens. The reporting party indicated that management is aware these employees are using fraudulent identification documents to verify their eligibility to work, via the E-Verify web-based system.

In March 2025, HSI personnel served all 14 Zipps Restaurant locations, plus their

corporate headquarters with a Notice of Inspection (NOI) requiring the company to produce their Form I-9s. The following week, HSI personnel received compliance documents from Zipps, including a list that was alleged to contain the original Forms I-9 for all current and former employees within the past two years.

The investigation identified 76 employees that had three to forty-two active employers other than Zipps in quarter two of 2025. Arizona Department of Economic Security reports showed multiple jobs and extremely high wages earned in the same quarter which is consistent with aggravated identity fraud.  Additionally, these individuals certified themselves as United States citizens on their Form I-9s.

Investigators learned that although Zipps has a number of locations, the business operates as an interconnected network under common management. Each restaurant location maintained its own payroll and records. However, employees could be transferred or assigned to other restaurant locations based on the needs of the company. Defendant, for example, was initially hired at one location before he was later promoted to managing kitchen staff across multiple locations.

### b.  Federal Search Warrants

On January 26, 2026, HSI Arizona executed 29 federal search warrants at 15 Zipps Grill restaurants in the Phoenix area. These included 15 federal criminal search warrants and 14 civil administrative warrants. The operation resulted in the arrest of 39 individuals working at Zipps who were unlawfully present in the United States.

### c.  Material Witness Interviews

Two of the individuals that were arrested, Juan Carlos Reynosa-Espinoza ("Reynosa") and Cuauhtemoc Cruz-Reyes ("Cruz"), were detained as material witnesses. Reynosa said that he grew up in Michoacan, Mexico and he came to the United States when he was seventeen years old. Reynosa said that in 2023 he was referred by a friend to Defendant to work at Zipps. Reynosa said that Defendant oversees everything that is happening within all the restaurants and the staff. Reynosa said that Defendant told him he

could start working for him and he was going to give him a name to start working. Reynosa said that he started working at the Zipps located on Hayden Road and the Zipps in the downtown location.

Reynosa stated Defendant did not give him any documents or identification to work at the restaurant. Reynosa stated Defendant told him that he would be using the name "O.L." Reynosa said that he paid Defendant $300 for the use of the name. Reynosa stated that he gets paid by check and with the name of O.L. At the time of his arrest, Reynosa had a paycheck in his possession made out to "O.L." Reynosa stated he cashes his check at a shady business where they do not ask for identification. Reynosa identified Defendant on a six-pack photo-lineup.

Investigators interviewed Cruz who said that he entered the United States approximately 15 years ago through Nogales, Arizona. Cruz stated he found the job advertisement online. Cruz said he met with Defendant and Cruz believed that Defendant had hired him under a fraudulent name. Investigators obtained an I-9 that showed Cruz was hired at Zipps in August 2022, under the name "J.J.D.B." At the time of his arrest, Cruz had a pay stub under the name "J.J.D.B." Cruz said that was a name that Defendant had provided to him. Cruz said there are others that do the same as Defendant, but he does not know their names.

### d. Defendant's Interview

Defendant waived his rights and agreed to speak with investigators. Defendant admitted that he came to the United States illegally in 2006. Defendant stated that Zipps was his first job when he arrived in the United States. Defendant stated that at that time he was hired, there was no E-Verify. Defendant said he obtained a fake identification and brought it to Zipps to gain initial employment. Defendant said he worked initially as a dishwasher, then he was promoted to a kitchen manager, and then to his current position where he oversaw kitchen staff at all Zipps locations. Defendant explained that he personally contacts the applicants, and explains the job to them. Defendant ensures the

applicants have the correct experience for the job. Defendant indicated that he conducts interviews with the applicants and chooses the location where the applicants will work. Defendant passes along the information of the candidates that he wants to be hired to the restaurant managers.

Defendant said that he did not have formal hiring authority and that it was the individual restaurant managers who hired employees. Defendant and other kitchen managers would help applicants fill out the Form I-9s because they could speak Spanish. Defendant indicated that the managers knew that many kitchen staff employees were not authorized to work. Defendant said that many of the identifications that were used were poorly made.

Defendant stated he never personally provided physical IDs to people to use to pass the Form I 9 or E Verify inspection. Defendant said he helped employees fill out their I-9s, despite knowing the identities used were fake. Defendant was confronted with a text exchange in his cellphone showing that on October 17, 2024, Defendant sent a photograph of an Arizona driver's license and Social Security card belonging to a real person to Miguel Torres aka "Gato." Defendant admitted he sent the documents for his friend "Gato" for him to use to gain employment at Zipps. He stated he provided the identity of "J.J.Z." This identity was first used for employment at the Zipps 36th Street restaurant approximately three or four years ago. That person was approved through E-Verify but never showed up. Defendant said he kept the cleared ID information to use in the future. Defendant indicated that Torres no longer works for Zipps. A review of the DES records for wages earned for "J.J.Z." corroborate Torres time working for Zipps.

## II.     PLEA AGREEMENT

The defendant pleaded guilty to an Information charging him with Unlawful Transfer, Possession, or Use of a Means of Identification, in violation of 18 U.S.C. § 1028(a)(7), (b)(1)(A)(ii), and (c)(3)(1). The parties agree the Defendant's sentence shall not exceed the greater of time served or five months imprisonment. The Government will

recommend a two-level reduction for acceptance of responsibility. The Government shall dismiss the Indictment at the time of sentencing.

### III.    PRESENT INVESTIGATION REPORT

The Sentencing Guidelines range is the "starting point and the initial benchmark" for all sentencing proceedings, and should be "kept in mind throughout the process." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc). The Sentencing Guidelines range is not presumed to be reasonable, but instead is only one of the § 3553(a) factors to be considered by the Court. *Id*.

Probation correctly calculates the Defendant's base offense level at 11. Defendant correctly receives a two-level reduction for being a Zero Point Offender and a two-level reduction for Acceptance of Responsibility. Defendant's final offense level is 7 and with a criminal history category (CHC) I, his final guideline range is 0 to 6 months.

### IV.    ANALYSIS OF SENTENCING FACTORS AND RECOMMENDATION

The Government agrees with the sentencing recommendation from the U.S. Probation Department that Defendant be sentenced to 5 months in the Bureau of Prisons followed by one year of supervised release.

The sentence in this case should balance the nature and circumstances of Defendant's actions with Defendant's history and characteristics. Defendant initially came to the United States without legal status in 2006. Defendant admits that he began working at Zipps under a fraudulent identification, which is notable given the current investigation showing a pattern of aliens working at Zipps without authorization. Defendant has one prior criminal conviction, a driving under the influence offense committed in January 2011. It is notable that outside of his DUI conviction, Defendant has remained gainfully employed and has avoided other criminal arrests during the last twenty years. Defendant has no prior removals from the United States.

The nature and circumstances of Defendant's actions, however, necessitate the recommended sentence. While the Government does not contest that Defendant did not

have official or formal hiring authority at Zipps, Defendant appears to have been a key facilitator in bringing on new kitchen staff. Defendant was responsible for posting Zipps job opportunities on employment websites that listed him as the point of contact. Defendant would speak directly with applicants, interview the applicants, and even chose the location where the individual would work. Defendant admitted that he helped applicants fill out the Form I-9 paperwork. Defendant passed along the information of the applicants he wanted to be hired to restaurant managers who finalized the I-9 paperwork. Defendant admitted that he and the restaurant managers knew that many of the applicants for kitchen staff did not have authorization to work in the United States.

Defendant admitted, pursuant to his plea agreement, that he provided real identity documents to another person, Miguel Torres, to allow Mr. Torres to fraudulently use the identity to work at Zipps. Defendant indicated he knew that this particular identity had passed E-Verify and would work for Mr. Torres to be accepted for employment at Zipps. Defendant alleges his misconduct is limited to this interaction with Mr. Torres. Although it is unclear how long Defendant was involved in this criminal conduct or how many unauthorized workers that he assisted by providing false documentation, the investigation reflects at least three such individuals Defendant aided in obtaining unauthorized work including Mr. Torres and the two material witnesses, Mr. Reynosa-Espinoza and Mr. Cruz-Reyes. Mr. Reynosa-Espinoza indicated that he paid Defendant $300 for a fraudulent name that Mr. Reynosa-Espinoza used to work at Zipps. Defendant also provided Mr. Cruz-Reyes with a false identity that he used to work at Zipps.

Although Defendant did not provide physical identification documents to these three individuals, he illegally provided them the means for them to work without authorization. In doing so, Defendant caused harm to citizens who became victims of identity theft. Defendant can rationalize and minimize his behavior, but the investigation demonstrates that Defendant helped to facilitate the use of stolen identities for unauthorized workers at Zipps. Defendant is certainly not solely responsible for the hiring practices at Zipps, but Defendant played a role in furthering the hiring of unauthorized workers.

Whether for altruistic reasons or for financial gain, Defendant exploited the identities of citizens to benefit unauthorized workers and ultimately the company.

### V.     CONCLUSION

For the above reasons, the United States respectfully requests a sentence of 5 months.  The government also requests one year of supervised release.

Respectfully submitted this 26th day of May, 2026.

> TIMOTHY COURCHAINE
> United States Attorney
> District of Arizona
>
> *s/Ryan McCarthy*
> Ryan McCarthy
> Assistant U.S. Attorney